# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

## PACER Cover Sheet
## for Electronically Filed Documents

Any data shown here are current as of 06/10/06 . Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

**Case Title:** Sharon Steffien v. Alvin Theodore Steffien

**Case Number:** 04-01096

### Document Information

**Description:** Memorandum Opinion re: [1-1] Complaint To Determine Dischargeability of Debts (11USC523) and Denial of Discharge (11USC727).

**Received on:** 2006-03-08 11:32:45.000

**Date Filed:** 2006-03-08 00:00:00.000

**Date Entered On Docket:** 2006-03-08 00:00:00.000

### Filer Information

**Submitted By:** Patti Hennessy

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: ALVIN STEFFIEN,　　　　　　　　　　　　　No. 7-04-10416 MS

　　　Debtor.

_____

SHARON STEFFIEN, n/k/a
SHARON NELSON,

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Adversary No. 04-1096 M

ALVIN STEFFIEN,

　　　Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Creditor Sharon Steffien's Complaint to Determine Dischargeability of Debts Under 11 U.S.C. § 523 and Denial of Discharge Under 11 U.S.C. § 727[1] ("Complaint"). The parties narrowed the issues raised in the Complaint to the following: 1) whether attorneys fees and costs incurred by the Plaintiff in pursuing the collection of and in objecting to the discharge of certain debt representing spousal support and property division claims are non-dischargeable under 11 U.S.C. § 523(a)(5) and (a)(15); and 2) whether the claims which formed the basis of a judgment held by The Rock Island Bank (the "Bank") against the Defendant, which Plaintiff acquired by an assignment from the Bank, are non-dischargeable under 11 U.S.C. § 523(a)(2) and

_____

[1]Plaintiff's claim for denial of discharge under 11 U.S.C. § 727 was dismissed with prejudice by stipulation. (*See* Docket # 36).

1

(4)[2] based on allegations of fraud. *See* Consolidated Pre-Trial Order (Docket # 42). The Court took the matter under advisement following a trial on the merits. Having reviewed the evidence and considered the testimony presented at trial, the Court finds that Plaintiff has not met her burden of proof with regard to her claim that the judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

With regard to the first issue, the parties agreed at trial that any attorneys' fees incurred in connection with Plaintiff's attempt to collect spousal support are also non-dischargeable, so that in the event the state court determines as part of *In re Marriage of Sharon Steffien v. Alvin T. Steffien,* Case Number 97D005776, that any or all of the attorneys' fees incurred are in the nature of support, such fees in an amount determined by the state court are non-dischargeable under 11 U.S.C. § 523(a)(5) and/or (15). The parties agreed to strike from the Consolidated Pre-Trial Order the word "significant" from the Contested Facts Regarding Attorneys Fees and Costs of Collection, ¶ 4.a., so that the parties stipulate that:

> The Plaintiff incurred and continues to incur attorney's fees and costs in pursuit of an collection of spousal support, property division and insurance coverage and in connection with the ongoing litigation concerning dischargeability.

With regard to the second issue, Defendant argues as a threshold matter that Plaintiff lacks standing to assert a non-dischargeability cause of action because she is merely the assignee of the judgment obtained by the Bank against Defendant. Defendant urges that because Plaintiff only

---

[2]Although the Consolidated Pre-Trial Order continues to reference 11 U.S.C. § 523(a)(4), none of the uncontested or contested issues of fact contained in the Consolidated Pre-Trial Order or presented at trial are relevant to a claim for non-dischargeability of debt based on fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. Because no evidence was presented as to this cause of action, the Court will not consider it. To the extent Plaintiff seeks a determination of non-dischargeability under 11 U.S.C. § 523(a)(4), it is denied.

2

obtained an assignment of the judgment, she did not obtain an assignment of the underlying cause of action that formed the basis of the judgment and, therefore, is precluded from contesting dischargeability. Defendant's argument fails. The Acknowledgment of Assignment of Judgment "assigns, transfers and sets over to Sharon Steffien, as Assignee, all of its right title and interest in and to the judgment referred to above." (*See* Exhibit 2, p. 2[3]). Thus, Plaintiff obtained *all* of the rights attendant to the judgment. An assignment does not automatically affect the dischargeability of the claim. *Cf. State Bar of California v. Tooks (In re Tooks),* 76 B.R. 162, 164 (Bankr.S.D.Ca. 1987) (finding that the State Bar, as assignee, obtained all of the rights of the assignor, and held that the partial assignment of a non-dischargeable claim under § 523(a)(4) and § 523(a)(6) does not affect the dischargeability of the claim.).

Having found that Plaintiff acquired all of the right, title, and interest in the judgment, the Court will next consider the nature of that right. The Supreme Court's decisions in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) and *Archer v. Warner,* 538 U.S. 314, 123 S.Ct. 1462, 155 L.Ed.2d 454 (2003) are instructive. In *Brown v. Felsen* the Supreme Court held that a consent judgment which did not refer on its face to fraud, did not prevent the bankruptcy court from looking beyond the consent judgment to determine whether the debt represented by the consent judgment was in fact a debt for money obtained by fraud. 442 U.S. at 130 and 138. "[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry

---

[3]The Court notes that the Assignor identified in the Acknowledgment of Assignment of Judgment is Fidelity National Title Insurance Company, not the Bank. The parties do not contest the fact that Plaintiff is the holder of the judgment obtained by the Bank. *See* Consolidated Pre-Trial Order - Uncontroverted Fact k.

3

into the nature of the debt." *Id.* at 138. Similarly, in *Archer v. Warner,* the Supreme Court relied on the reasoning in *Brown v. Felsen* in finding that a settlement agreement does not serve to change the nature of the debt for dischargeability purposes and, therefore, does not prevent the plaintiff from showing that the debt represented by the settlement arose out of false pretenses, a false representation or actual fraud which would render the debt non-dischargeable under 11 U.S.C. § 523(a)(2)(A). *Archer v. Warner,* 538 U.S. at 320 and 323. *See also In re DeTrano,* 326 F.3d 319, 322 (2nd Cir. 2003) (noting that when "the judgment does not indicate the cause of action on which liability is based, . . . a creditor is allowed to prove in a subsequent nondischargeability proceeding that the underlying debt is based in fraud."). These decisions establish that it is appropriate for the Court to look beyond the judgment to determine whether the facts that formed the basis of the claim render the debt non-dischargeable. The Court, therefore, finds that Plaintiff is not precluded from litigating the dischargeability of the underlying debt represented by the judgment she obtained by assignment.

Turning to the merits of the dischargeability action, the Court will consider whether the Plaintiff has met her burden of proof. Debts are non-dischargeable under 11 U.S.C. § 523(a)(2)(A) to the extent obtained by "false pretenses, a false representation or actual fraud." 11 U.S.C. § 523(a)(2)(A). To prevail on a cause of action based on 11 U.S.C. § 523(a)(2)(A), the plaintiff must prove by a preponderance of the evidence the following elements: 1) that the debtor made a representation; 2) that the representation was false; 3) that the representation was made with the intent to deceive the creditor; 4) that the creditor relied on the representation; 5) that the creditor's reliance was reasonable; and 6) that the debtor's representation caused the creditor to sustain a loss. *Fowler Bros v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996). The Supreme Court modified this test for non-

4

dischargeability under 11 U.S.C. § 523(a)(2)(A) and established that the standard of reliance is "justifiable" reliance rather than the more stringent standard of "reasonable" reliance. *Field v. Mans,* 516 U.S. 59, 74-75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995).  The Plaintiff must establish all five elements by a preponderance of evidence or the debt will be declared dischargeable. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (establishing preponderance of the evidence standard for dischargeability proceedings); *In re Herrig,* 217 B.R. 891, 895 (Bankr.N.D.Okla. 1998) ("Unless all of these items are established by a preponderance of the evidence, the debt is dischargeable.").

The facts surrounding the cause of action under 11 U.S.C. § 523(a)(2)(A) can be summarized as follows.  Sometime in the fall of 1993 Defendant, through his companies Financial Solutions Designed, Inc., and /or Future Systems Development, Inc. (together, "FSD"), entered into a transaction with the Bank whereby the Bank loaned FSD money to be secured by certain leases for capital equipment ("First Transaction").  Defendant personally guaranteed the loan.  Sometime later, in 1994, it was discovered that certain of the leases pledged as security for the loan were "fraudulent leases" in that no equipment was ever purchased in connection with those leases.  The Bank demanded that Defendant and FSD buy back the "fraudulent leases" and as part of that transaction obtained a Security Agreement which listed all of the leases, including the "fraudulent leases" ("Second Transaction").  In connection with the Second Transaction, Defendant told the Bank that he had no intent to repay the Bank because he was unable to pay the Bank.  Nevertheless, he agreed to enter into the Second Transaction at least in part because he had already executed personal guarantees in connection with the First Transaction.  The Bank foreclosed its Security Agreement obtained as part of the Second

5

Transaction and obtained a judgment against FSD, and against Defendant, individually, based on his guaranty, in the amount of $2,356,215.05, plus interest at the rate of twenty-one percent per annum from December 20, 1994. (*See* Exhibit 1). Plaintiff acquired this judgment by assignment. (*See* Exhibit 2).

Plaintiff contends that because no equipment was purchased in connection with the leases and because Defendant admitted that he did not intend to repay the Bank, that the debt represented by the Judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Plaintiff's cause of action with regard to the Second Transaction fails to satisfy several of the required elements for non-dischargeability under 11 U.S.C. § 523(a)(2)(A).

At the time of the Second Transaction, the Bank knew that some of the leases securing the First Transaction were questionable, and, in fact, the Bank informed the Defendant that the Bank suspected that the leases were bad. (*See* Exhibit 13 - 11/15/2000 Alvin Theodore Steffien deposition - Vol. II, p. 56 and p. 60, line 24 "The bank knew they [the leases] were fraudulent."; Therefore, Plaintiff has not established that the Bank relied on a misrepresentation in entering into the Second Transaction. *Cf. Staten Island Savings Bank v. Scarpinito (In re Scarpinito),* 196 B.R. 257, 266 (Bankr.E.D.N.Y. 1996) (concluding that the bank failed to establish the element of actual reliance on any misrepresentation where at the time of the transaction at issue the bank was already aware of the debtor's prior misrepresentations and the representative of the bank admitted that the reason they entered into the transaction was because "that appeared to be the best way to liquidate the Loan under the circumstances."). In addition, the Defendant was candid with the Bank with regard to his intent to repay. He told the Bank at the time of the Second Transaction that he would agree to buy back the

6

"fraudulent leases" but that he had no intent of repaying the Bank because he had no ability to do so. (*See* Exhibit 13 - 11/15/2000 Alvin Theodore Steffien deposition - Vol. 22, p. 60, lines 12-14 "I was as specific as I possibly could have been. I told them that — number one, had no intention of paying them, nor could I pay them."). No intent to defraud the Bank in connection with the Second Transaction has therefore been shown. Nor has there been proof of a misrepresentation made by the Defendant to the Bank with regard to the Second Transaction. The "fraudulent leases" were not presented to the Bank by the Defendant in connection with the Second Transaction as an inducement for the Bank to extend an additional loan. Plaintiff has, therefore, not shown by a preponderance of the evidence all the required elements under 11 U.S.C. § 523(a)(2)(A) in connection with the Second Transaction.

The underlying First Transaction likewise fails to satisfy all of the required elements for non-dischargeability under 11 U.S.C. § 523(a)(2)(A). Plaintiff focuses her argument on the fact that the leases pledged as security for the loan were, in fact, fraudulent leases because the equipment did not exist. Defendant admitted that the equipment relating to the "fraudulent leases" did not exist, but repeatedly testified that he did not know at the time the leases were entered into and pledged to the Bank as security in connection with the First Transaction that the equipment did not exist, or that no equipment would be purchased in connection with those leases.

To rebut this testimony, Plaintiff offered the testimony of Perry DeLuna, who executed signatures other than his own on behalf of the lessees identified in the "fraudulent leases." (*See* Exhibits 21 and 22 reflecting signatures of Christopher O'Shea and Paul Hessing, which Mr. DeLuna in fact signed). Mr. DeLuna testified that Defendant was present when the "fraudulent leases" were signed,

7

and that Defendant knew at that time that no equipment would be purchased in connection with those leases. In addition, checks were introduced into evidence reflecting that a check dated November 9, 1993 from FSD in the amount of $435,723.00 was made payable to B.O.P., Inc. with a notation on the bottom stating "Purchase Equipment" (Exhibit 23), that a cashier's check in the amount of $525,253.05 dated November 15, 1993 from Rock Island Bank was made payable to Bay of Plenty, Inc., Mr. DeLuna's company (*See* Exhibit 24), and that a check from Bay of Plenty, Inc. dated November 30, 1993 was made payable to FSD in the amount of $79,510.05. (*See* Exhibit 20). Mr. DeLuna testified that the check he received from FSD was not for the purchase of equipment, that Defendant asked him to return the check from FSD (Exhibit 23) because a new check was to be issued, and that the check from BOP, Inc. to FSD was for Defendant's participation in the leases.

Whether Defendant knew that the leases were "fraudulent leases" at the time they were executed depends upon the credibility of the witnesses. But in addition to whether Defendant knew at the time that the leases were executed that no equipment was to be purchased, Plaintiff must also show that Defendant presented the "fraudulent leases" (i.e. the knowingly false representation) to the Bank with the requisite intent to defraud. "Intent is a subjective issue requiring the court to 'examine the totality of the Debtor's actions to determine if [he] possessed the requisite intent to deceive the Plaintiffs.'" *In re Maxwell,* 334 B.R. 736, 742 (Bankr. M.D.Fla. 2005) (quoting *In re Copeland,* 291 B.R. 740, 766 (Bankr.E.D.Tenn. 2003) (remaining citation omitted)).

The testimony of Mr. DeLuna that Defendant knew at the time that the leases were executed that there was no equipment associated with those leases, and that no equipment was going to be purchased, coupled with the checks evidencing a payment from Mr. DeLuna's company to FSD,

8

might support an inference that Defendant intended to defraud the Bank by presenting the "fraudulent leases" to the Bank as security for the First Transaction. However, even if the Court were to accept Mr. DeLuna's testimony and infer an intent to defraud, Plaintiff has failed to satisfy a third required element under 11 U.S.C. § 523(a)(2)(A): justifiable reliance. "A creditor cannot establish non-dischargeability pursuant to § 523(a)(2)(A) without proof of reliance." *Maxwell,* 334 B.R. at 742 (citing *In re Perkins,* 52 B.R. 355, 357 (Bankr.M.D.Fla. 1985)). When there is a direct borrowing relationship between the Defendant and the creditor, the "creditor must show that it relied on debtor's fraudulent representation in issuing the loan." *ITT Fin. Services v. Hulbert (In re Hulbert)*, 150 B.R. 169, 172 (Bankr. S.D.Tex. 1993) (citing *In re Ophaug,* 827 F.2d 340, 343 (8th Cir. 1987)). The level of reliance the creditor must show is justifiable reliance. *Field v. Mans,* 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). "Justifiable reliance is an intermediate level of reliance; less than reasonable but more than mere reliance in fact." *In re Wong,* 291 B.R. 266, 275 (Bankr.S.D.N.Y. 2003) (citing *Field v. Mans,* 516 U.S. at 73-75). Plaintiff has failed to prove by a preponderance of the evidence that the Bank justifiably relied on any representation made by Defendant when it determined to extend the loan to FSD.

There is no evidence of the Bank's reliance in connection with the First Transaction. No witness testified on behalf of the Bank. None of the deposition testimony offered as an exhibit in support of Plaintiff's claim is from a representative of the Bank with personal knowledge of the Bank's loan approval process with regard to the First Transaction. The evidence before the Court is that there was a loan, that some of the leases pledged as security for the loan were for equipment that was never purchased, and that Defendant and FSD defaulted. The board meeting minutes are from 1994

9

and all relate to the Second Transaction. (*See* Exhibits 3, 4, 5). The only deposition testimony from the Bank is from Dale C. Harmon (*See* Exhibit 10), who had no knowledge of the facts surrounding the First Transaction. There is deposition testimony from Defendant that the Bank did its own due diligence, but there is no evidence presented to show that the Bank relied on the leases in determining whether to extend the loan in connection with the First Transaction. (*See* Exhibit 9 -Deposition of Alvin Theodore Steffien, Vol. I, pp. 127-128 "They [the Bank] did their own credit review and their own due diligence. So the lease transactions that were fraudulent leases that were brought to them, they had their credit committee and their credit analysts analyze the deals, perform a due diligence, and whatever level that they make a decision on, a credit approval on, whether it went to their credit approval committee – I'm not sure if it's the credit approval committee or if they're one and the same – and they approved the transactions."). Of course, the fact that the loan was extended and secured by the leases implies that the Bank based its decision to extend the loan at least in part on the fact that it was obtaining a security interest in the leases. Even this conclusion requires the Court to draw an inference based solely on the fact that the Bank extended a loan that was secured by leases for which no equipment was ever purchased. There is no evidence of the Bank's reliance. Moreover, the standard required under 11 U.S.C. § 523(a)(2)(A) is justifiable reliance, which is something more than actual reliance, but less than reasonable reliance. *Field v. Mans,* 516 U.S. at 74-75; *Wong,* 291 B.R. at 275. The Bank could have extended the loan in connection with the First Transaction for any number of reasons. Deposition testimony from Defendant indicates that he and FSD enjoyed a favorable banking relationship with the Bank because Defendant brought to the Bank deals that the Bank profited from. (*See* Exhibit 9, p. 160 "Their presentation to me was that it got as far as it did because of me and

10

our relationship . . ."). It is also possible that the Bank extended the loan because it relied on the security interest it was taking in the leases. Defendant's deposition testimony states that he believed the Bank conducted its own due diligence and determined whether to grant a loan based on its own internal policies. (*See* Exhibit 9, p. 127-128 and 160). However, none of this evidence suffices as proof by a preponderance of the evidence that the Bank justifiably relied on a representation made by Defendant in entering into the First Transaction. Plaintiff, has, therefore, failed to meet her burden of proof with regard to all of the required elements necessary to a determination of non-dischargeability under 11 U.S.C. § 523(a)(2)(A).

Based on the foregoing, the Court concludes that Plaintiff's remaining cause of action under 11 U.S.C. § 523(a)(2)(A) fails. Plaintiff has failed to show by a preponderance of the evidence all required elements for non-dischargeability based on false pretenses, a false representation, or actual fraud. This memorandum opinion constitutes the Court's findings of fact and conclusions of law entered in accordance with Rule 7052, Fed.R.Bankr.P. The Court will enter a judgment in accordance with this memorandum opinion.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.


Chris Pierce
Attorney for Plaintiff
PO Box 6
Albuquerque, NM 87103 -6

Raymond L. Riley
Attorney for Plaintiff
633 W 5th St 70th Fl
Los Angeles, CA 90071 -2005

Steve H. Mazer
Attorney for Defendant
122 10th St NW
Albuquerque, NM 87102 -2901

_____
Patti G. Hennessy
Law Clerk
(505) 348-2545

12